2d. That the tract of land claimed by the parties in this suit is the same, and is situated on the west side of the big Pigeon River, within the territory set apart for the Cherokee Indians, by the act of Assembly passed May, 1783.
3d. That the plaintiff claims by an entry made in the Entry Office of Rutherford County, in July, 1791, after the treaty made by Blount in the same year, and before the ratification thereof; and a grant issued on the said entry on the 4th day of January, 1792.
4th. That the county of Buncombe was established, by an act of the General Assembly, passed in December, 1791, after the ratification of the treaty obtained by Blount; and that the defendant claims by virtue of an entry made in the Entry Office of the said county of Buncombe, and a grant therein obtained.
5th. That the Indians, by the treaty so effected by Blount, sold the land in dispute, with other lands, and received the full consideration agreed upon as the price of those lands, except the annual pension, before the entry made by the plaintiff as aforesaid; and that the same were ceded by the Indians and became the property of the State of North Carolina, by virtue of that treaty, and the Indian title thereby extinguished.
6th. That the said treaty was ratified before the date of the plaintiff's grant; and that it was known to the Governor, at the time of issuing the said grant, that the land therein granted was part of the lands acquired by the said treaty.
7th. That the land in dispute lies to the South of Granville's line; and that by act of Assembly, passed in November, 1788, the lands lying to the south of Granville's line, west of the Indian boundary, were added to the county of Rutherford.
Argument for the plaintiff. A treaty becomes obligatory by (560) the execution, and begins to operate at that time, without the aid of a ratification. Therefore, in this instance, the Cherokees, having executed the treaty with the intention of conveying their lands, and having at the same time required the full consideration for them, had done everything on their part which was necessary to vest the lands completely in the State of North Carolina; and the subsequent ratification confined that operation from the date of the treaty; consequently, the fee simple of the land in question was vested in the State at the time the plaintiff made his entry.
The reason and intention of the acts of Assembly, passed in April, 1778, and May, 1783, so far as they prohibited the entry of lands over *Page 475 
what was in those acts designated the Indian line, was to protect the Indian lands from encroachments by the white people; when, therefore, the Indian title was extinguished by the sale of the lands, those acts ceased to operate, there being no longer any subject matter on which they could operate, and, consequently, were virtually repealed by that treaty. The effect of those acts being thus removed, the entry in question, and the grant founded on it, are good, and the plaintiff's title sufficient to enable him to recover in this action.
Argument for the defendant. The plaintiff can recover only by the strength of his own title; and if it shall appear that this title is bad, judgment ought to be given for the defendant.
It is believed that the plaintiff's grant is void on two grounds. First. Because the lands, when entered, did not lie in the county of Rutherford, where the entry was made. Second. Because the entry was prohibited and the grant obtained therein declared void by the act of Assembly, passed 1783, sec. 6.
It is agreed that the land in dispute lies on the west side of Big Pigeon River, within the lands described by the Act of 1783, sec. 5; and by that act reserved to the Cherokee Indians. Rutherford County, by section 23 of that act, and by the Act of 1788, ch. 10, was extended west to the Indian boundary, as limited by the Act of 1783, that is, to Big Pigeon River, and not to any line or boundary which might afterwards be made; and there is not act of Assembly extending (561) that county beyond, or authorizing an entry in that county of lands on the west side of that river.
It may also be observed, from the case agreed, that the land in dispute lies within the bounds described by the third section of the Act of 1783, ch. 2 for which lands (except those prohibited) John Armstrong's office was opened, and again discontinued in the year 1784; after which, until Buncombe was established a county, no office existed in which those lands could be entered.
If the plaintiff had any authority for making his entry, he must have derived it from the Act of 1777, ch. 1, revived by the Act of 1783, except so far as it comes within the purview of the last-mentioned act. The Act of 1777 ascertains what lands may be entered, and points out the manner in which title shall be obtained. It provides only for entering with the entry taken of any county a claim of lands lying within such county. The Legislature foresaw that much inconvenience and mischief would follow if lands were permitted to be entered in a different county from that in which they lay; and to provide against every possible mischief of that kind, by section 9, grants not obtained in the manner by the act directed, or in the evasion of the provisions and restrictions thereof, are declared utterly void. *Page 476 
The land in dispute did not lie within the county of Rutherford, nor within any other county, at the time the entry was make, but within the district for which the office had been discontinued; the grant, therefore, having not been obtained in the manner the act pointed out, but contrary to the provisions and restrictions thereof, and there being no other law authorizing the plaintiff's entry, it is concluded that this grant is utterly void.
In the Act of 1788, ch. 10, there is a legislative declaration that entries in Burke and Rutherford of lands not in the counties where the entries were made, are contrary to the intent and meaning of the acts in such case provided; and from the Acts of 1784, ch. 17, 79, sec. 3, and ch. 45, sec. 4, the like inference may be drawn. As much (562) property depends on this question, the opinion of the court on this part of the case would be very desirable.
Secondly. It is agreed that the land in dispute lies within the bounds set apart to the Cherokees, by the Act of 1783, sec. 5; by the same act, sec. 6, all entries of land within those bounds, and grants obtained thereon are declared void. The prohibition in this act continued until the lands should accrue to the State, by treaty or conquest, so as to come within the provisions of the Act of 1777, sec. 3. And it is denied that those lands accrued to the State until the ratification of Blount's treaty. By article the 15th of the treaty, it was to take effect from and after the ratification thereof; so that, by the treaty itself, it was stipulated that the Indian title to those lands should accrue to the State from the ratification, until which time it remained in the Cherokees. The plaintiff's entry being made previous to the ratification, and before the title accrued to the State, the grant obtained thereon is made void by the 6th section of the Act of 1783.
It is contended that the defendant's title is good. Buncombe, after the ratification of the treaty, was established a county, by Act of Assembly, in December, 1791, with all the rights, privileges, and immunities of other counties. Few or none of the Acts of Assembly establishing other counties, since the Act of 1777, mention anything with regard to entering lands; yet all of them have opened offices for receiving entries; and their right to do so has never been questioned. The defendant's entry was made in the county of Buncombe, in which county the land lay, and after it had accrued to the State by purchase.
By the Act of November, 1777, sec. 3, a right is given to the persons therein described, "To enter with the entry taker of any county within this State a claim for any lands lying in such county." It appears that the lands in question are situate in Buncombe County, and that the entry was made with the entry taker for the county of *Page 477 
Rutherford, who had no right to take entry of lands except within that county; he, therefore, in this particular, did an act not (563) founded on any authority, and, of course, a mere nullity in itself, on which no legal grant could issue. The same act, sec. 9, declares that every right, title, etc., which shall not be obtained in the manner by the act directed, or by fraud, illusion, or evasion of the provisions and restrictions thereof, are deemed and declared utterly void.
The grant to the plaintiff appears to me to come expressly under this description: It was obtained by a process not warranted by the Act of Assembly, there being no entry, such as was described by the act; there was no ground for issuing the grant; it was, therefore, obtained fraudulently, with a manifest view to elude and evade the act; and consequently utterly void. I am, therefore, upon this point, without going into the other matters stated in the case, of opinion that judgment be entered for the defendant.